We will now proceed with our slightly altered panel. I welcome Judge Rofner and to Inres to proceed. Good afternoon, Your Honors. Good afternoon. My name is Michael Schwartz, appearing today pro se on behalf of the Debtors' Appellants. Could you speak a little louder, please? Yes, sir. My name is Michael Schwartz, appearing today pro se on behalf of the Debtors' Appellants. I have done my best up to this point to effectively convey the reasons as to why we are here relative to the dispute in the statutes of 707A and 707B. This morning I would like to relay my personal opinion as to why this is important. It's bigger than myself, as most things are. This is important for business owners most particularly. Not by plan or design, my personal professional career has revolved entirely around dealing with business owners and their businesses in a professional role. For the last three years I've worked with Bank of America Merrill Lynch, helping them integrate their commercial banking businesses with their wealth businesses and figuring out how that business owner is important and how those businesses interrelate. It should come as no surprise that businesses and business owners are extremely important to the financial industry. We're pro-business and we exist to serve that space. May I start you off? Yes, ma'am. Because what I've been wondering about is why we have to reach Section 707A in this case. In other words, why wouldn't dismissal under Section 707B have been straightforward given your income and the nature of your debts? As I understand it, the loan from Barclays was essentially an advance on your salary and it was used to buy the condo, the car, for consumer type purposes. So why wouldn't your situation be precisely the sort of case to which Section 707 applies and on what basis might you argue that the Barclays loan was not a consumer debt? That's where I need help. Yes, Your Honor, and that's a fantastic question. And 707B is where much discussion in the bankruptcy proceedings took place. And importantly, the Barclays loan was a business loan. And the case history is very clear. In fact, the bankruptcy judge alluded to this fact in discussions, kind of directing how she would perceive the nature of the note being, in fact, a business loan. Because the nature of the debt is determined by how it is incurred. And it is incurred by definition as a business loan when it is incurred with a profit motive. And that is very specifically how the Barclays debt was, in fact. And if you go back and look to the employment agreement, that note was part of the employment agreement watch, which also included many other profit motive items. So, in other words, it does not matter what you spend the money for. Is that the bottom line? That is correct, ma'am. It's how it is incurred. What is the motive that the money is incurred for? Is it incurred with a profit motive? If it is incurred with a profit motive, it is characterized as a business debt. That is how the case law lines up. For the record, the funds of the loan were not used for the purchase of the condo. We already owned our condo. How about the car? The car, we have had a loan on. So funds were not used to purchase the car. We had an auto loan with Chase Finance. So funds were not used from the loan to purchase a car. Well, the basic argument that your opponent makes is that you and your family were sort of living high on the hog. And if you had cut some of your personal expenses, you would have been able to pay some of the debt. That's their basic argument. And that provides cause for denying the discharge. Isn't that their argument? So I think at the crux of it, it comes down to, well, if they have the ability to pay some, they should pay some. And if I may, they also alluded to the fact that we did not present to the court any verification that we made adjustments to lifestyle or cut costs or made amendments. And the fact that is, and I think that comes to the basis of equity and the discussion of equity is, we did. We made some very large changes, cuts, moved, reduced many expenses. But did not spend our time arguing that in the bankruptcy course. Because when we go back and look at the statute of 707A, income is not present in 707A. You know, it's one of those things in 707A. Well, there is the good cause provision, right? And to date, the only thing... And then it gives some examples. The examples are not necessarily exhaustive. They're not exhaustive, but within the series intended by Congress, you know, then there could be other things that are within that same series as suggested and provided. But outside of that, you know, that are of the same nature of series, they would not exist. Certain courts, and I think what ultimately allowed this court to accept our direct appeal, was that there is a split amongst the circuits. There are some circuits that find a bad faith to exist as one of those additional causes. To date, no court has ever found any additional cause under 707A, beyond those examples provided, for bad faith. Well, the court went out of its way to relay, to state that it did not find bad faith. It did not find that we had acted in any way that would question our credibility. But why wouldn't a court have the authority to look beyond those grants and consider whether a petitioner is acting in good faith by seeking relief under Chapter 7? Or whether there is otherwise cause to dismiss the bankruptcy petition? Forgive me for not having as in-depth of a legal background knowledge, but I'll do my best to answer your question. For someone that isn't a lawyer, you're doing a very good job. Thank you. I have the ability to research as best I can, and when I go back and look at the history of our bankruptcy system, and how we came to where we are, we've always had a history of a delineation between consumer and business. And when you look back at the 2005 amendments, when we made the big changes to our bankruptcy laws, it was broad-based and encompassing, but the big changes were really driven by the consumer side, because there was some out-of-control consumer spending on secured credit cards, where people would walk into Chapter 7 and just get them discharged and be on their way, and it was unfair to the industry. Now, at the same time, there is a focus on making sure that in maintaining appropriate bankruptcy laws, we don't inhibit business owners, and that safety net policy we've established to encourage entrepreneurialism and business creation in this country. And I'm getting my light, and I'd like to save a few minutes for rebuttal. Okay, well, you'll have time on rebuttal. So, Mr. King? Thank you, Your Honors. Patrick King on behalf of Appellee Barclays. May it please the Court. I would like to address specifically the questions that were asked by the Court with respect to the condo or the car being bought with the assets. And I think he told the truth when he said they weren't bought with the assets, but what he didn't go on to expound and say, but he made the payments on those two items with the loan. The intent of the loan was for him to be able to live during the time period it would take for him to build up his book of business with my client, Barclays. And if you take a look at the 2004 examination that was attached to our motion to dismiss, he testified throughout that entire examination that all he used those proceeds for was his daily living expenses to make his car payments, to make his house payments, to pay $18,000 a year for child's kindergarten tuition. That's exactly what the loan proceeds went to. That was the intent of the loan proceeds when he took it, and that's how he applied it. We think that this case does involve a very important question of what does cause mean under Section 707A, and that is a question that needs to be settled. But that question is not properly before this Court today. This Court, I'm sorry, the Bankruptcy Court granted our motion to dismiss on September 16th of 2014. Appellant says in his brief at page 9, The debtors appeal from the oral ruling of the Honorable Pamela S. House on September 16th and the final order to dismiss will occur on that same day, granting Barclays' motion to dismiss. The debtors seek immediate review of the Bankruptcy Court's September 16th oral ruling. The docket in this case reflects that was the date of judgment in this case, not February 25th, I'm sorry, February 11th, when the Court entered a subsequent memorandum of opinion in support of the order that she issued on September 16th. Are you arguing jurisdiction now? We certainly are. Well, I wish you would, well, I don't know what my brothers wish, but it seems to me that, you know, bottom line, the party filed a joint certification in support of a direct appeal pursuant to 28 U.S.C. 158 D. 2, and that statute does not appear to me to impose any time limit for such certification. I would really appreciate your going, you know, more into why Section 707B doesn't present a more straightforward means of resolving this case. We submit that it did, Judge, and it's the majority of our motion to dismiss below. What the Bankruptcy Court, and this is in the record, what she did not want to address is Mr. Schwartz's assertion that this is a business debt, not a personal debt. What would have been required in order for her to do that, and this is all in the transcript, is to conduct an evidentiary hearing, which the record is clear she wanted to avoid. With respect to 707A, she didn't have to jump through those hoops. Under 707A, she had the transcript that was attached to the motion to dismiss, and under 707A, all she had to look was at the exhibits to the schedules to the petition, and she was able to show just on those two documents, which are admissions by the appellants, that they had the ability to pay. They didn't curtail any of their spending. They were paying exorbitant amounts of money for things like children's tuition. They didn't make any attempt to repay the loan to my client. They singled out my client for the only debt that they're really trying to discharge here. The loan on the condo was securitized by the condo itself, and those are the types of factors that the court found to be caused under 707A. So are you arguing both 707B and 707A? No, we only addressed 707A on the appeal, Judge. Did you argue it in the district court? Yes, we did, Judge. You'll see in our motion to. . . I don't really understand. I don't understand how they go together, 707A and B. Because under 707B, Judge, there's three primary differences between the two statutes. Under 707B, first there's a presumption of abuse if the client, if the appellant, fails the means test, which we respectfully submitted that they did, just based on the information that was attached to the schedules, as well as the information that was contained in 704. 707B also allows the court to compel the appellant to go to either a 13 or 11. 707A does not. And 707B, most importantly, only deals with consumer debt, primarily consumer debt, whereas 707A does not. And if you take those three things into consideration, cause under 707A must mean something other than just technical or procedural. But aren't you arguing that his debts are primarily consumer debt? We did in the court below, Judge. But the judge just said, right, that it was just to bother, and so he was going to move to A. That's what her opinion says. Because D was sort of a take time or something. Why does A specify these three grounds and stop there? Well, first of all, Judge, the three grounds, well, it says including. And it starts, well, it has, it says that 707A. That's unreasonable delay. Right. Nonpayment of fees. Correct. And failure to file certain information required by Section 521A, but only on motion of a U.S. trustee. And as the Bankruptcy Court observed in footnote 4 from Memorandum, Pending and Order, and as the 11th Circuit held in Piazza, those are not necessarily just procedural technical issues. For example, unreasonable delay prejudicial to creditors. That can certainly be an incident. No, I'm not suggesting that they're just technicalities. I mean, that's the other side's argument. I was just wondering why, I mean, for cause is a very broad term. It is, Your Honor. And could embrace a lot of things. It's just odd that having said for cause, they would then specify just three items, which the first is broad. The other two seem pretty narrow, don't they? Two and three. Well, they do, but again, I wouldn't concede, Judge, that those are not technical. Number two, for example, not paying the fees. You could intentionally not pay the fees to drag out the proceeding in bad faith. This is what, the trustees' fees? Yes. Look, when Judge Hollis dismissed pursuant to 707A, what she was really relying on was Schwartz's ability to pay their debts. As opposed to their bad faith. She said they were not in bad faith. And if what we're talking about is a petitioner's ability to pay, doesn't that logically take us to Section 707B rather than 707A? I agree, Judge, and that's why 707B is the first argument in our motion to dismiss. The judge wanted to avoid an oral hearing on that issue, and I respectfully disagree, Judge, that the court limited it to just his ability to pay. She listed a number of for-cause issues that caused her to find under Section 707A. Those included living an extravagant lifestyle. Well, well, well, stop. That's ability to pay. No effort to repay, Judge. It's not an ability to pay. That's just shirking your responsibility as a debtor. That was one of the items that she specifically found. Singling out a single creditor was another item that she found to be a basis for cause. Why did the judge say it wasn't bad faith? I mean, if you know you have a lot of debt, and you're spending a great deal on kind of optional items for your personal welfare, why wouldn't that be bad faith? You know, you're evading your debtors for not to keep alive, not to be able to eat, but for, I mean, I think the school is sort of significant. I certainly wouldn't, you can see that is very important, but some of the things they spent money on seemed quite dispensable. Obviously, my speculation, Judge, as to what Judge House was doing, because I can't get in her head, because I think she was trying to bring harmony between the split in the circuits as to what for cause really means, because we had three circuits. We had the 3rd, the 6th, and the 11th circuits, which all said it's bad faith. Then we had the 8th circuit in the Huckfeld case that said it's for cause. The same conduct that could be bad faith establishes cause, and the 9th circuit, of course, in Padilla adopted the 8th circuit's position. So what she was saying here is you can have all these things that are being intentionally done. You don't have to find, as the 8th circuit said, that this is bad faith because maybe that is or maybe it's not grounds under Section 7a, but it is cause nonetheless. All these things constitute cause, and that would bring harmony between the three circuits that have found bad faith and the two have said that you can decide just on a cause basis. Is that it? Unless the Court has any more questions. Okay. Thank you very much. Thank you. Thank you, Mr. King. Mr. Schwartz, do you have anything further? Sorry. Two items I just wanted to direct the Court's attention to. First, in answering to the three items under 707A, this Court in United States v. Taylor, 2010, noting that under the doctrine of ad justem generis, a statutory list of examples can be a clue to the statute's intended scope since the examples are a substitute for or a supplement to a definition. In a lot of the other going back and forth under what does this list mean, does it include bad faith, does it now include something beyond bad faith, it goes back, a lot of it hinges on this ad justem generis, and I can't do justice to some great explanation of that, but that seemed to be near the root of what a lot of people were focusing on, the statutory construction of Section 707A. And then the second item, relative to income, and whether I tithe, that's a function of income and faithfulness, but it's a function of income. Whether I'm able to afford a private school or not is a function of income. Whether I can afford to shop or do anything or pay for a nice car, it's a function of income. And the Court really did hone in on that more than once. It's based on my income, my ability to pay, which is a function of income. And so the Court, in its opinion, and I'm out of time, but if I could finish my thoughts. You can finish what you're saying. It referenced First Capital Bank of Kentucky v. Black. That's in 2012. And the case talks about where a debtor's income alone is not sufficient to find cause to dismiss a case for bad faith. And references to Perlin, which is a case constantly referenced in this whole 707A, 707B thing, is otherwise dismissal would essentially be based upon a debtor's mere ability to pay, which is expressly prohibited by the legislative history, referencing Senate Report No. 95-989. So in the buildup to both the passage of this stuff as well as the 2005 amendments, Congress told us what they were focused on and what they were prohibiting when passing these things. So we're not stumbling in the dark as trying to figure out what this stuff really means. There is guidance out there as far as what was intended when they passed this stuff. Thank you. Okay, well thank you very much, Mr. Schwartz and Mr. King. And the case will be taken under advisement and the court will be in recess until next month.